## Case No. 14,806.

### UNITED STATES v. CLARK.

[1 Lowell, 402;[1] 4 N. B. R. 59 (Quarto. 14);
1 Am. Law T. Rep. Bankr. 237; 3 Am.
Law. T. 226; 2 Leg. Gaz. 294.]

Circuit Court. D. Massachusetts. 1869.

BANKRUPTCY—INDICTMENT FOR FRAUDULENT DIS-
POSITION OF PROPERTY—OMISSION OF PROP-
ERTY IN SCHEDULES—INDICTMENT.

1. Whether congress has power to punish a
fraud committed by a debtor on his creditor,
both residing within the same state, unless the
act is done in contemplation of bankruptcy or
in connection with some other matter within the
federal jurisdiction, quære?

2. Section 44 of the bankrupt act [of 1867 (14
Stat. 539], punishing bankrupts who, within three
months before their petition is filed, dispose of
goods otherwise than in the due course of trade,
with intent to defraud, does not refer to an in-
tent to defraud only the original seller of the
goods thus disposed of.

[Cited in U. S. v. Penn. Case No. 16,025; U.
S. v. Myers, Id. 15,848.]

3. The crime of fraudulently omitting prop-
erty or effects from a bankrupt's schedule is
complete when the false schedule is filed.

[Cited in Huntington ~ Saunders. 64 Fed.
480.]

4. An indictment for omitting property and
effects from the schedule need not allege that the
bankrupt took the oath of allegiance prescribed
by section 11 of the bankrupt act.

Indictment [against Hugh Clark] for a mis-
demeanor under the bankrupt act. After a
verdict of guilty, the defendant moved in ar-
rest of judgment.

M. F. Dickinson, Jr., Asst. U. S. Dist. Atty
E. Avery, for defendant.

LOWELL, District Judge. The third count
of this indictment charges that the defend-
ant, within three months next before the
commencement of proceedings in bankrupt-
cy, did dispose of, otherwise than by bona
fide transactions in the ordinary way of his
trade, certain of his goods and chattels, de-
scribed, which he had obtained on credit, and
which remained unpaid for, with intent to
defraud a certain creditor. It is objected
that congress cannot legislate for frauds
committed by a debtor on a single creditor
within the same state, unless the act relates
to bankruptcy or to some other matter with-
in the federal jurisdiction; and that it has
not in fact so legislated in this case. Without
now passing upon the constitutional ques-
tion, which, however, seems to me well tak-
en, I may say that on the construction of
the clause under consideration I am of opin-
ion with the defendant, that the scope of the
act is to punish frauds on the creditors gen-
erally, and not on the particular creditor
who sold the goods, nor any other single
creditor, and that this count, which charges
a fraud on one creditor only, cannot be sus-
tained. If the goods were obtained on credit
with intent to dispose of them to raise mon-

ey, the fraud on the seller would be the most
obvious one; but the statute seems to be di-
rected against frauds upon the creditors as
a body, and it does not refer the intent to the
time of the purchase, but to that of the dis-
posal of the goods out of the usual course
of trade, and at that time the fraud could
not injure one creditor more than the rest.

But the verdict cannot be set aside, if ei-
ther of the other counts is good, for it was
a several finding on each of the three char-
ges. The first and second counts both al-
lege specified omissions of property and ef-
fects from the schedule of assets filed by the
defendant with his voluntary petition in
bankruptcy. It is urged that all the acts and
omissions mentioned in the first part of sec-
tion 44 [of the bankrupt act (14 Stat. 539)]
must take place after the proceedings are
begun; whereas, the filing of the schedules
in voluntary petitions is contemporaneous
with the beginning of the proceedings. Up-
on a careful reading of the section, it ap-
pears by no means necessary to hold that
the clause beginning, "or shall, with intent
to defraud, wilfully and fraudulently con-
ceal from his assignee or omit from his sched-
ule," is qualified by the original limitation
of time. It is a new division of the subject,
and one which requires no such limitation,
because the prohibited acts cannot be com-
mitted before bankruptcy. The offence is
complete if a bankrupt fraudulently omits
from his schedule any property or effects,
with the designated intent. An English case
was cited to show that a bankrupt ought not
to be held guilty of omission and conceal-
ment until he had passed his last examina-
tion. But that case was decided under St.
6 Geo. IV. c. 16, § 112, which punishes a
bankrupt who shall not, upon his examina-
tion, deliver up his estate, books, &c., and it
was held that he had a locus penitentiæ until
his last examination. Under our act, his du-
ty is to file accurate schedules at the outset,
and if they are fraudulently inaccurate he is
punishable. We have no last examination of
bankrupts, nor any examination at all, un-
less specially ordered. The whole system is
so different in this respect, that the case cited
has no relation to the subject of inquiry.

Another objection is, that the indictment
does not sufficiently show that the bankrupt
court had jurisdiction, and that the proceed-
ings were regular and sufficient. Under this
head, again, there was much reliance placed
upon the English cases. It is hardly neces-
sary to consider now how far an indictment
must go in this direction. We have never
adopted the English practice of requiring in
every action tried by an assignee evidence
of every fact necessary to show that he is
rightfully such. The assignment is conclu-
sive evidence of his right; and the bankrupt
court is a superior court whose acts are pre-
sumed to be regular. In this case, however,
enough is pleaded to show that the district
court, sitting in bankruptcy, had jurisdiction

1 [Reported by Hon. John Lowell. LL. D., Dis-
trict Judge, and here reprinted by permission.]

of the subject-matter and the person, and that proceedings were duly begun. The absence of an allegation that the defendant took the oath of allegiance is more especially relied on. To this there are two answers: First, that the omission of effects from the schedule with intent to defraud might be complete before the oath of allegiance was taken: because, although the prescribed form contemplates that the oath shall be annexed to the petition, yet it cannot be doubted that under section 11 it might lawfully be filed at any time afterwards and before further proceedings are had, with precisely the same effect as if annexed. It may be doubted, too, whether the bankrupt can take advantage of the omission of his duty in this respect. Another answer is, that neither the law nor the prescribed form requires that the petition should state whether the bankrupt is a citizen of the United States or not: and this indictment does not show this defendant to be a citizen: and as the statute is equally applicable to resident aliens, while the oath is to be taken only by citizens, there is nothing on the face of this indictment which calls for an allegation that the oath was taken. If the defendant was a citizen, and neglected to take the oath, he must show it in defence. The indictment, in setting out the petition, follows the form of petition prescribed by the supreme court, and actually adopted in this case.

Motion denied.

[The defendant was thereupon sentenced to imprisonment in the jail of the commonwealth at Dedham, in the county of Norfolk, for the space of fifteen months.] [2]